## Bobrow *v.* Manekin, Appellant.

*Trade-marks—Injunction—Preliminary injunction—Labels for cigars
—Name of brand.*

A court of equity will restrain by preliminary injunction a defendant
from using a label for a brand of cigars in which the word "GLAD" is
printed and arranged with other words and decorative features so as
to imitate closely in general appearance a label of the defendant in
which the word "BOLD" is used as a name of a brand; but in awarding
such injunction the court will not by preliminary injunction restrain
the mere use of the word "GLAD" as the name of a brand of cigars.

Argued Dec. 17, 1914.   Appeal, No. 228, Oct. T.,
1914, by defendant, from decree of C. P. No. 5., Phila.
Co., March T., 1914, No. 1,027, awarding preliminary
injunction in case of Harry L. Bobrow and Charles
Bobrow, copartners trading as Bobrow Brothers, v.
Harry Manekin.   Before RICE, P. J., ORLADY, HEAD,
KEPHART and TREXLER, JJ.   Decree modified.

Bill in equity for an injunction.

STAAKE, J., filed the following opinion:

This cause came before the court on Friday, March 27,
1914, on the hearing of a rule on the defendant to show
cause why a preliminary injunction should not issue
against him, as prayed in the bill of complaint.

It appeared, from the evidence submitted to the court,
that the plaintiffs, on or about April 1, 1908, had
adopted for their own exclusive use on a certain quality
and character of cigars manufactured by them, a certain
trade-mark, consisting of the arbitrary word or symbol
"BOLD" printed upon a label pasted or affixed to the
cover of each box in which the cigars of that certain
quality and character were packed for sale.   There was
also stenciled upon the outside of the cover leaf of the
box and on one or more sides of the box, and also upon
a small label affixed to one end of the box, the same

word "BOLD." It appeared that the label containing the word "BOLD" ran diagonally across from the lower left-hand corner to the upper right-hand corner of the label in gold letters on a shaded background, with certain scroll work on the label and with the monogram of the plaintiffs on the label. This word "BOLD," with the scroll work, was registered by the plaintiffs as a trade-mark in the United States Patent Office under serial number 32393 on July 8, 1913.

In the year 1908, it appeared, the plaintiffs manufactured, approximately, 60,000 cigars, known as "BOLD" cigars. Thereafter, their business steadily increased, until, from April 18, 1913, to March 27, 1914, the plaintiffs manufactured 18,000,000 such cigars.

It further appeared they had expended large sums of money in advertising the label device and the name, so that the brand of cigars known as the "BOLD" cigars became well known to the wholesale and retail trade, and was recognized by the name, design and label, which recognition became a large and valuable good will to the plaintiffs.

It further appeared that in and about the month of October, 1913, the defendant, a manufacturer of cigars, adopted the word "GLAD" as a trade-mark and then began to manufacture cigars and box and sell them with a label containing the word "GLAD" in gold letters running from the lower left-hand corner to the upper right-hand corner of the label, with defendant's monogram on this label.

The defendant, since October 19, 1913, conducted his cigar business, manufactured and does now manufacture and sell cigars known as "GLAD" cigars, designated and marked with this label.

The plaintiffs claimed that the defendant had adopted his label, mark and brand with the intention to deceive the public and the buyers of cigars by giving the defendant's box and label such a general appearance as would confuse the ordinary buyer and have him pur-

chase defendant's cigars, believing that he was purchasing the well-known cigars of the plaintiffs.

The plaintiffs further claimed that the adoption by the defendant of the particular and peculiar arrangement of his label was for the evident purpose of deriving benefit from the plaintiffs' good will, which the plaintiffs had acquired by a large expenditure of money in the advertising of their cigars, as well as in maintaining the character and standard of the cigars produced.

It must be admitted that the evidence submitted to the court on this hearing showed a very generous amount of expenditure by the plaintiffs in the creation and use of various advertising devices, including one by which some 3,000,000 bags for the holding of five cigars were freely distributed to their customers.

The case was not prosecuted by the plaintiffs before the court on the ground of a right acquired by virtue of the United States trade-mark of the plaintiffs, but it was urged that the use which was made by the defendant of the word "GLAD" in the manner of such use was an unfair, unjust and unlawful use in competition with the business of the plaintiffs.

The defendant admitted that the plaintiffs used their label referred to in paragraph 2 of the bill of complaint, and which was exhibit "A" in the evidence, and, further, that he, defendant, conducted the business of manufacturer and wholesale dealer in cigars in the city of Philadelphia and had for eight months past manufactured and sold cigars in boxes labeled as exhibit "B," attached to the plaintiffs' bill of complaint, which cigars were contained and sold in boxes stamped with the word "GLAD," but that such stamping of the label upon defendant's box would not deceive any person of ordinary intelligence using ordinary caution in purchasing the same.

Defendant denied, in his answer, that he had applied the label or the "impressions upon the said boxes and said cigars for the purpose of injuring the plaintiffs in

their trade or business, or for the purpose of destroying the plaintiffs' good will and business, nor for the purpose of palming off the goods of defendant as the goods of plaintiffs."

Defendant further denied this use of his label exhibit "B" had injured or damaged the plaintiffs' trade or business in any respect whatsoever.

Defendant further denied he used his label with the intent to deceive the purchaser of cigars, or that the label exhibit "B" was in any manner a close imitation of the plaintiffs' label and box, averring that the label would not in any manner whatsoever deceive a person of ordinary intelligence using ordinary precaution in purchasing cigars of either brand of plaintiffs or defendant.

The defendant denied any manner of infringement upon any rights of the plaintiffs.

At the hearing plaintiffs' counsel averred that the controlling question before the court on the hearing of the rule for a preliminary injunction was not the violation of the plaintiffs' trade-mark, but was whether the defendant was purposely using the name, which was printed in such a way as to deceive a person of ordinary intelligence, by making such person using ordinary caution believe that he was purchasing the plaintiffs' product. It could hardly be successfully contended that the word "GLAD" as a name alone could be taken by any one for the word "BOLD," notwithstanding both are words of four letters and that each word contains the letters "L" and "D." It would appear, however, that it was not the word "GLAD" which was alone complained of as being evidence of unfair competition by the defendant, but it was the manner in which the word "GLAD" was used by placing it on the label in such a position or manner by having the word running diagonally across the label from the lower left-hand corner to the upper right-hand corner thereof in such letters and which such a shaded background with such scroll

work upon the label, together with the placing of the defendant's monogram also upon the said label.

Three witnesses were called by the plaintiffs in support of their contention. Frederick Horn, who had been in the tobacco business about twenty-five years, testified that the box of "GLAD" cigars shown to the court would be likely to deceive an ordinary purchaser; that it would deceive him. It appeared he had been offered the "GLAD" cigars for purchase by him, and he did not buy any, but that at the time they were offered to him it deceived him right away as soon as he saw the label. He claimed that if he came in a store in a hurry and the box was handed to him, he asking for a "BOLD" cigar, it would deceive him; but "if a customer came in and had lots of time and you showed him the two boxes of 'BOLD' and 'GLAD' cigars, and he could read and write and had his vision," he would also be deceived, notwithstanding he had been in the retail business some twenty-five years.

Adolph Loub saw a boy in a trolley car who had a bundle of cigars in five boxes, the outside label of which attracted his attention, the label on the outside lid "being so close to the 'BOLD' I thought it was the 'BOLD.'" Addressing the court, this witness stated: "The label on the outside lid, the outside label, so attracted my attention that I thought it was a 'BOLD,' until I looked further, and then I thought it was an imitation." But, testifying further, the same witness said: "It was the lettering on this label, just exactly the lettering of this label, that attracted me." The lettering, he stated, was "very much alike;" in fact, "the lettering in the whole word;" but the "general appearance" of the end of the word is very much alike. If people were in a hurry, a "GLAD" cigar might be substituted for a "BOLD." The lettering of the whole word "GLAD" was, in the opinion of this witness, an imitation of the lettering of the word "BOLD."

Samuel H. Del. Statius, a salesman for Lewis Stein

& Co., manufacturers of silk petticoats, stated he had entered the Penn Square Building on a business matter and asked a cigar salesman standing there on the corner for two "BOLD" cigars, and he was just about to pick the cigars out of the box, when he noticed it was not the "BOLD," but the man was offering him the "GLAD." At the start it looked like a "BOLD" to him, until he looked the box all over thoroughly. At first glance "it looked like the 'BOLD.'" On cross-examination, this witness said that if he would ask for a "BOLD" cigar and the seller handed him a "GLAD" cigar box filled with cigars, it would deceive him; although the color scheme of both is different, some of the letters are the same. He admitted if he had an opportunity to look at the box, he could see the difference, but that he would be deceived at the first glance; that when he had asked for a "BOLD" cigar and took a "GLAD" cigar he did not at first notice it, saying: "You know, you don't always look in the box; you tell the clerk and you put your hand in the box and pull them out;" that "if you ask for a 'BOLD' and he pushes the 'GLAD' to you, you have no suspicion that it is a 'GLAD' cigar." Being asked, "If you had an opportunity to look at the box, would that deceive you if they sold you a 'GLAD' cigar?" he answered, "It would; yes, sir." This witness, under cross-examination, insisted that if he went to an ordinary cigar case, knowing the difference in color of the two boxes, one a blue and the other a sort of grayish, the difference in the monogram, the shaping of the letters and the names, and he being accustomed to the "BOLD" box, at first it would "fool" him, and that if he "wanted a 'BOLD' cigar and they lifted up the lid of the case" for him to help himself, the resemblance was such that he believed he would be deceived by it.

Undoubtedly, for many years, it was assumed by the courts that "unless a technical trade-mark were violated, no relief could be had," but it was "soon demonstrated

that the acceptance of any such rule opened the door to all manner of commercial knavery, and at an early day judges with consciences and a proper sense of sportsmanship began to decide cases in favor of the complainant which were in no sense trade-mark cases, but where the defendant's conduct involved precisely the same wrong—the sale of one trader's goods as those of another—the result being accomplished by some ingenious contrivance, the deceptive use of personal, geographical or descriptive names, imitated labels or form of package or some of the infinity of ways which enable one trader to represent his goods as those of a competitor whose reputation is better and whose trade he covets:" Harvard Law Review, December, 1913, page 139.

In Perry v. Truefitt, 6 Beav. 66 (1842), Lord LANGDALE said (page 73):

I think that the principle on which both the courts of law and of equity proceed in granting relief and protection in cases of this sort is very well understood. A man is not to sell his own goods under the pretense that they are the goods of another man; he cannot be permitted to practice such a deception nor to use the means which contribute to that end. He cannot, therefore, be allowed to use names, marks, letters or other indicia by which he may induce purchasers to believe that the goods which he is selling are manufactured of another person. I own it does not seem to me that a man can acquire a property merely in a name or mark; but whether he has or not a property in the name or the mark, I have no doubt that another person has not a right to use that name or mark for the purposes of deception and in order to attract to himself that course of trade, or that custom which, without that improper act, would have flowed to the person who first used, or was alone in the habit of using, the particular name or mark."

In Croft v. Day, 7 Beav. 84 (1843), Lord LANGDALE said (page 88):

It has been very correctly said that the principle in these cases is this—that no man has a right to sell his own goods as the goods of another. You may express the same principle in a different form and say that no man has a right to dress himself in colors, or adopt and bear symbols to which he has no peculiar or exclusive right and thereby personate another person for the purpose of inducing the public to suppose, either that he is that other person, or that he is connected with and selling the manufacture of such other person, while he is really selling his own. It is perfectly manifest that to do these things is to commit a fraud, and very gross fraud."

"Unfair competition" covers the class of cases of which the one now before the court is one, and this includes not alone "passing off" one article for another, but any conduct on the part of one trader which tends unnecessarily to injure another in his business. The question really is whether or not the defendant's conduct is calculated to deceive the public into the belief that his goods are the plaintiffs'. If such a false representation is actually made, the plaintiffs would certainly be damaged, for they would be in danger of having their customers decoyed away from them by the defendant's intentional misrepresentation, and it would be a case in which the custom and advantages to which the enterprise and skill of the first appropriator had been given, and which had given him a just right, would be abstracted for another's use by deceiving the public and inducing it to purchase goods and manufactures of one person, supposing them to be of another: Canal Co. v. Clark, 13 Wall. (U. S.) 311, 322 (1871).

The act of the defendant, however innocent, is considered constructively fraudulent if the result would tend to unfair trade, to confusion of goods and to interference with the rights of another: Manitowoc Pea Packing Co. v. Numsen, 93 Fed. Rep. 196 (1899).

It is very clear, from a consideration of all of the

cases, and they are now many, that "not only words, but things, such as the nature of the wrapper, the mode in which the goods are made up, and so on, may go to make up a false representation; but it is not necessary to establish fraudulent intention in order to claim the intervention of the court: Cellular Clothing Company v. Maxton & Murray, 16 R. P. C. 397, 404 (1899).

The court recognizes that if a man has uniformly manufactured a thing of a certain quality under a certain name, of good material, in such a way as to realize a good profit from it and to give it a distinct commercial value by the creation of the demand for it upon the part of the public, he may acquire a right to the name, marks and form of construction or in a method of advertising even without a registered trade-mark, because the intentional violations of such an acquired right would be, in the eye of the law, unfair competition, it being an intentional injury of the person who had acquired the right, as well as a deception and a fraud of and upon the general public. Such a deception and fraud would undoubtedly injure the business of the manufacturer, who, by continuous trading and by keeping up the standard of his article, had acquired a reputation and fame for the article of his particular manufacture.

Other cases in favor of the contention of the plaintiffs in this cause are:

Arthur, trading as Green Chemical Company v. Instantine Chemical Company, 19 Pa. C. C. Rep. 81, in which the plaintiff was the owner of the word "INSECTINE" when used as a trade-mark on its liquid preparation intended to destroy noxious insects. The defendant put up a like preparation under the name of "INSTANTINE" and had imitated the style of the bottles and labels thereon and the color of the preparation of the plaintiff in order to induce the public to purchase the product as the preparation of the plaintiff and to deceive and mislead. The defendant put up their

preparation in a bottle of the same size and shape, with a similar sprinkler, with the word "INSTANTINE" printed in black type on bright yellow paper. The name was divided into three panels, like that of the plaintiff, and the reading matter bore certain distinct resemblances to that of the plaintiff's label. The court granted the injunction prayed for.

Portuondo v. Portuondo, 222 Pa. 116, was an appeal from the court of common pleas, No. 3 of this county, in which that court held:

"A dealer or manufacturer will be enjoined from using trade mark, labels and invoices where they bear such resemblance to those of another manufacturer that it is impossible to reach any other conclusion than they were designed from those of the other manufacturer, with not too much variation to prevent them from being accredited by the unobservant and unwary to the other dealer or manufacturer and with just enough variation to distinguish one from the other when a comparison is made between them.

"The general rule is that anything done by a rival in the same business by imitation or otherwise designed or calculated to mislead the public in the belief that in buying the product offered by him for sale they were buying the product of another manufacturer, is in fraud of the other's rights, and will afford just grounds for equitable interference."

The appeal in this case was dismissed by the Supreme Court.

In Pratt's App., 117 Pa. 401 (1887), it appeared that the plaintiffs were farmers, residing in Delaware county, engaged in the dairy business since 1810, until 1873, when defendant began to make butter. The plaintiff adopted a certain stamp, with a peculiar print, claimed as a trade-mark, the distinguishing features of which are a cornucopia and the name of "DARLINGTON." The defendant owned a farm in the same neighborhood and also made butter for the market since 1873 and used

for some years a stamp for his butter having on it "PRATT" and the words "CUMBERLAND DAIRY 333." Later this was changed and he used the cornucopia and stamped the butter with his name, "PRATT." In this case the court below granted the injunction prayed for and the appeal to the court above was dismissed. The court held:

"If the defendant's print is an imitation of that of the plaintiff, if it is calculated to deceive and mislead, the motive of the defendant in adopting it is not material, so far as the law of the case is concerned. The protection which equity extends in such cases is for the benefit of the manufacturer, and to secure to him the fruits of his reputation, skill and industry. The question is whether the defendant's label or mark is calculated to deceive the public and to lead them to suppose they are purchasing an article manufactured by the complainant, instead of the defendant."

The distinguishing feature of the plaintiff's trade-mark was the cornucopia. It is a symbol, a device, which the plaintiff had adopted to mark this butter. The court said:

"Though the two devices constituting trade-marks, when placed side by side, present points of dissimilarity, and the distinctive name of each party appears upon the one he uses, yet if the distinguishing features of the plaintiff's trade-mark had been appropriated in that of the defendant, the latter will be restrained by injunction."

See also Hires Company v. Hires, 182 Pa. 346, where it appeared that the defendant was a kinsman of the complainant—that he had the same name of Hires—and in cartoon, its color, the substance of the printed matter, the bottle, the indicated designation or title, all of which slightly varying from the plaintiff's device, make up a trade commodity, which, except to the sophiscated or closely inquisitive, would be taken to be a like article to the plaintiff's.

See further, Morse v. Conwell, 2 W. N. C. 12; Witt-haus v. Wallace, 2 W. N. C. 610; Wamsutta Mills v. Allen et al., 6 W. N. C. 189; Gowans v. Ahlborn Bros., 4 Kulp, 31; Lorillard v. Wight, 15 Fed. Rep. 383.

Having carefully examined the cases submitted by the learned counsel for the defendant, namely, Heinz v. Lutz, 146 Pa. 592; Brown v. Seidel, 153 Pa. 60; Lafean v. Weeks, 177 Pa. 412, and the other cases submitted in the defendant's brief, the majority of which are cited in this opinion, we find that many of them are distinctly trade-mark cases, and not those involving the question of unfair competition.

The cases submitted both on behalf of plaintiffs and defendant undoubtedly involve the question whether there is or is not such resemblance between the two labels as to deceive a purchaser using reasonable caution; that is, whether there is such a combination of script, lines, colors or arrangement as would deceive any person using ordinary caution. That is, would the defendant's device likely deceive a person of ordinary intelligence?

These cases also held that it is only where there is a manifest intent upon the part of one manufacturer to sell his goods as the goods of another manufacturer, that the aid of equity has been successfully invoked to restrain it. We repeat that if the case at bar was before the court upon the question of violation of trade-mark alone, the court might have some hesitation in granting an injunction, but as the case is before the court on the statement of plaintiffs' counsel as a case of unfair competition alone, the court is convinced that, applying the principles of the cases of unfair competition, there can be no doubt in the present case that the similarity of labels shown in the case would deceive a person of ordinary intelligence using ordinary caution.

It is also very clear that where the party charged with imitation has adopted a like style of putting up the packages, such adoption is some evidence upon the

question of intention.  We are convinced that the defendant has evidenced a "manifest intent" to so arrange the matter upon his label as to the number of letters in the name, in the style of printing the name "GLAD" at an angle and in the similarity of the letters used, and in the general arrrangement of the same, running from the lower left-hand corner to the upper right-hand corner of the label, and with the placing of the defendant's monogram on the label, to have said label be an imitation of the label, mark and brand of the plaintiffs.

Strictly speaking, the article produced should create its own market—this is, as to the material used and the form and shape of cigar, and the care taken in its manufacture, but when there is a use of good material and the care taken in the manufacture, it gives it a reputation among smokers of cigars which creates the good will which is the valuable possession of the maker. Anything which is done by another manufacturer which will tend either to deceive the public or to injuriously affect the reputation of the product of the original manufacturer would be such unfair competition as would warrant the interposition of the restraining hand of the court.

We repeat, the court is convinced from the evidence that the label, mark and brand of the defendant are an imitation of those of the plaintiffs, and that they were adopted with the intention of deceiving the public and the buyers of cigars; that this imitation label, mark and brand are calculated to deceive persons purchasing cigars, and that they were adopted by the defendant for the purpose of deriving benefit from the plaintiffs' good will which plaintiffs had acquired in the manufacture and sale of the brand known as "BOLD" cigars in the manner in which they were sold as to label, mark and brand by the plaintiffs.

The conclusion of the court, therefore, is that the use of said label, mark and brand by the defendant in the manner now used and complained of by the plaintiffs

constitutes unfair trade competition as against the plaintiffs, and that an injunction should be issued restraining the defendant from using the word "GLAD" as a brand for cigars manufactured by him or sold by him in such a way as to imitate the labels of the plaintiffs used by them upon their brand of cigars known as "BOLD" cigars; that a preliminary injunction should be issued restraining the defendant until final hearing from using the word "GLAD" as a brand for cigars manufactured by him or sold by him in such a way as to imitate the labels of plaintiffs used upon the brand of cigars known as "BOLD" cigars.

And now, to wit, August 5, 1914, upon consideration of the bill of complaint and findings by the court in favor of the complainants on June 26, 1914, it is ordered and decreed that the defendant, Harry Manekin, be restrained from using the word "GLAD" on the label, mark and brand of cigars manufactured and sold by him, constituting unfair trade competition as against the plaintiffs. That a preliminary injunction should be issued restraining the defendant until final hearing from using the word "GLAD" as a brand of cigars manufactured and sold by the defendant. That the defendant is not to use the word "GLAD" or other similar words upon cigars or the boxes containing same in imitation of the complainants' trade-mark "BOLD," and that he should not further use in unfair competition the label exhibit "B," or any substitute label similar thereto, in fraudulent imitation of complainants' said label exhibit "A."

Security to be entered in the sum of $200.

*Error assigned* was decree awarding preliminary injunction.

*John Monaghan*, with him *David Phillips*, for appellant.

*Owen J. Roberts*, with him *Maurice G. Weinberg*, for appellee.

OPINION BY RICE, P. J., February 24, 1915:

The learned judge of the common pleas concluded his elaborate and well-considered opinion as follows: "The conclusion of the court, therefore, is that the use of said label, mark and brand by the defendant in the manner now used and complained of by the plaintiffs constitutes unfair trade competition as against the plaintiffs, and that an injunction should be issued restraining the defendant from using the word 'Glad' as a brand for cigars manufactured by him or sold by him in such a way as to imitate the labels of the plaintiffs used by them upon their brand of cigars known as 'Bold' cigars; that a preliminary injunction should be issued restraining the defendant until final hearing from using the word 'Glad' as a brand for cigars manufactured by him or sold by him in such a way as to imitate the labels of plaintiffs used upon the brand of cigars known as 'Bold' cigars." As this is an appeal from decree awarding a preliminary injunction, we will not enter into any elaborate discussion of the merits. It is sufficient, for present purposes, to say that to the extent that the decree conforms to the foregoing conclusion we are unanimously of opinion it should not be interfered with. But the second clause of the formal decree subsequently entered, which reads, "restraining the defendant until final hearing from using the word 'Glad' as a brand of cigars manufactured and sold by the defendant," goes beyond the foregoing conclusion of the learned court and is broader than the pleadings and proofs warrant. This is sufficiently shown by the opinion itself, from which we quote: "At the hearing plaintiffs' counsel averred that the controlling question before the court on the hearing of the rule for a preliminary injunction was not the violation of the plaintiffs' trade-mark, but was whether the defendant was purposely using the name, which was printed in such a way as to deceive a person of ordinary intelligence, by making such person using ordinary caution believe that

he was purchasing the plaintiffs' product. It could hardly be successfully contended that the word 'glad' as a name alone could be taken by anyone for the word 'bold' notwithstanding both are words of four letters and that each word contains the letters 'l' and 'd.' It would appear, however, that it was not the word 'glad' which was alone complained of as being evidence of unfair competition by the defendant, but it was the manner in which the word 'glad' was used," etc. This is the correct view, and clearly the injunction should be modified to the extent indicated. And in view of the exceptions filed by the defendant before the formal decree was entered, we cannot say that he is barred by laches from raising this particular objection against the decree on the appeal. Whether he could have had the matter corrected upon final hearing as promptly as he could by appealing is problematical. At any rate, the statute gave him the right to an appeal, and it is our plain duty to consider it. Therefore, the plaintiffs' motion to dismiss the appeal is denied.

The decree is modified by striking out the words, "restraining the defendant until final hearing from using the word 'glad' as a brand of cigars manufactured and sold by the defendant," and to that extent the injunction is dissolved. As thus modified, the decree is affirmed, the costs of the appeal to be paid by the appellees.